## DAVID L. FAIRCHILD v. HENRY B. HOVLAND.[1]

### January 11, 1918.

### No. 20,640.

**Corporation — breach of contract to deliver stock — evidence.**

It is *held*:

(1) That the evidence supports a finding by the jury of a valid agreement by defendant to transfer and deliver to plaintiff certain full paid shares of the stock of a corporation and his failure and refusal to perform the same.

(2) That the record presents no reversible error in the admission of evidence.

Action in the district court for St. Louis county to recover $23,000. The facts are stated in the opinion. The case was tried before Dancer, J., and a jury which returned a verdict for $20,750. Defendant's motion for a new trial was granted, unless plaintiff consented to a change in the verdict as to the date from which it was to draw interest. Plaintiff having consented, the motion for a new trial was denied. From that order, defendant appealed. Affirmed.

*C. E. Purdy,* for appellant.

*A. L. Agatin* and *F. H. DeGroat,* for respondent.

BROWN, C. J.

This action was brought to recover the value of 1,000 shares of the stock of the Live Oak Development Company, a corporation organized under the laws of the state of Arizona. Plaintiff had a verdict and defendant appealed from an order denying a new trial.

[1]Reported in 165 N. W. 1053.

The evidence tends to show the following facts: Plaintiff is a civil and defendant a mining engineer. For a number of years prior to the transactions out of which the present controversy arose they had been intimate personal friends, and with one or two other persons to some extent associated together in the promotion of various mining ventures in Arizona, New Mexico and elsewhere. Their relations and dealings one with the other were of a character to establish confidence and respect for each other as to all dealings and transactions in which they were jointly concerned. Some time about January, 1909, defendant acquired and then held in his own right an option for the purchase of a group of mining claims in the state of Arizona. The claims were regarded as promising a paying mine upon proper development and therefore of substantial value. He called the option to the attention of plaintiff, and to the attention of Hoval A. Smith and Walter Barrows, who also to a certain extent had been associated with him in his mining ventures, and after one or two conferences it was agreed to organize a corporation to take over the option and to develop and operate the prospective mine. To that end the Live Oak Development Company was organized under the laws of the state of Arizona, with a capital stock of $500,000, divided into 50,000 shares of $10 each. Defendant was named as president of the corporation, Smith as secretary, and plaintiff as treasurer. Upon the completion of the organization defendant transferred the option to the company, and the ownership thereof was the basis for its subsequent operations. The agreement by which the transfer was effected contained appropriate stipulations and conditions, and among others, that 35,000 shares of the capital stock of the company should be offered and sold to the general public, and that 15,000 shares, referred to in the record as bonus stock, should be held in reserve for the use and benefit of defendant, to be issued to him free of charge in the event a paying mine was developed on the option property. While none of that stock was to be issued or sold to the general public, it was expressly agreed, as a part of the contract of transfer to the corporation, that defendant might cause the issuance of a portion thereof to himself prior to the development of a mine, upon the payment of an amount equal to the assessments theretofore levied upon the stock sold to the public; it being the plan of such sales to require a certain per cent of the par

value to be paid upon the issuance of the stock to purchasers, the balance being payable from time to time as the board of directors of the corporation might direct. It was the claim of plaintiff on the trial below and also in this court, that with the other persons heretofore named, including defendant, he was one of the promoters of the Live Oak Company, and that the reservation of the bonus stock was for his benefit as well as for the benefit of defendant and Smith. While he made this claim, and testified accordingly, we discover no evidence of an express contract granting to him any particular interest in or right to that stock. But acting on the theory and contention that he had an interest therein, though undefined in amount or extent, some time after the formation of the company he caused the secretary thereof, Smith, to issue to him one thousand shares thereof, for which he then paid the sum of $3,000; that being the amount of the assessment payable on sales of the other stock to the general public. Defendant was not advised of the issue of the stock at the time. He was president of the company and had signed stock certificates in blank, to enable ready sales in his absence, one of which was used in the issuance of the stock to plaintiff. As soon as issued plaintiff pledged the stock as security for the payment of a personal debt, but that fact is not of special importance. If he had the right to the stock it would seem of no concern to defendant how it was subsequently disposed of.

We here reach a material feature of the case in respect to which the parties are in violent dispute, and which presents the turning point of the case. Defendant testified that plaintiff had no interest whatever in the bonus stock, and that his act in causing the secretary to issue the 1,000 shares to him was without authority or right. He further testified that, upon discovering that the stock had been issued, he promptly demanded of plaintiff a surrender thereof for cancelation. That recognizing the wrongfulness of his act plaintiff complied with the demand and surrendered the stock to defendant, upon the promise of defendant to reimburse him for the $3,000 paid by plaintiff when the stock was issued. The stock was delivered to defendant and defendant thereafter reimbursed plaintiff as agreed upon.

Plaintiff flatly disputes this claim of defendant. He contended on the trial, and so testified, that defendant upon learning of the issuance

of the stock made no objection of the kind testified to by him or otherwise. On the contrary, that defendant subsequently stated to plaintiff that he, defendant, had obligated himself to deliver to certain eastern parties a number of shares of the partly paid Live Oak stock, and to enable him to discharge his obligations in that respect he requested a transfer to him of the 1,000 shares so issued to plaintiff, and that if plaintiff would do so defendant would refund the amount plaintiff had paid therefor, and when it became known that the option property had developed a paying mine, which would entitle defendant to all the bonus stock, defendant would cause to be issued to plaintiff 1,000 shares thereof full paid and without charge. It was upon this agreement, as plaintiff claims, and not otherwise, that he transferred the stock to defendant.

The option claims contained a valuable deposit of ore, the enterprise was a complete success and the Live Oak Company became a prosperous mining concern. Defendant was entitled under the contract to the bonus stock, and it was duly issued to him. Plaintiff demanded the 1,000 shares claimed by him under the agreement and defendant refused to deliver them. This action followed, though it was not commenced for several years after the transaction, and after plaintiff became entitled, if at all, to the stock.

Defendant's motion for a new trial was upon the grounds of error in the admission of evidence, and that the evidence is insufficient to support the verdict. The assignments of error in this court present the same points.

We find no error in the admission of evidence of a character to require a new trial. The ruling admitting certain exhibits may have been technical error, for the documents appear not to have been very material. But defendant was in no substantial view prejudiced. 2 Dunnell, Minn. Dig. 1916 Supp. § 7180. We answer the question whether the evidence supports the verdict in the affirmative. An extended discussion thereof will serve no useful purpose. It is sufficient to say that we have fully considered the evidence with the result stated.

The pivotal issue in the case centers around the contention of plaintiff that he was one of the promoters of the Live Oak Company, and as such entitled to share in the bonus stock; that he rightfully caused

the secretary to issue to him 1,000 shares of that stock, which he subsequently transferred to defendant, in consideration of his agreement to issue to plaintiff an equal number of shares of the same stock when the success of the company became assured, and when plaintiff should request the same. We find evidence in the record reasonably tending to support plaintiff's contention. The evidence is far from conclusive in his favor, but if believed by the jury is amply sufficient to establish his right of action. It is not disputed that the plaintiff and defendant and Smith and Barrows, at defendant's instance and request, conferred together in reference to the particular enterprise; all became interested in and were officers of the corporation when organized. And though their separate interests were not defined, yet the jury were justified in finding that it was contemplated by the parties that each should in some way benefit by the venture in the event of its success, and that defendant upon being informed thereof acquiesced in the issuance to plaintiff of the 1,000 shares of the bonus stock. The testimony of plaintiff is direct and positive that defendant so acquiesced, and that he agreed in consideration of a transfer of that stock to defendant to later issue to plaintiff the same number of shares of the bonus stock fully paid. Defendant as positively denied having so agreed. Clearly this was an issue for the jury. And we conclude, without further reference to the testimony or the claims of the respective parties, that the evidence presented by plaintiff on its face discloses a valid agreement to issue the stock to plaintiff, founded upon a sufficient consideration, and therefore enforceable. The trial court and jury accepted such evidence as expressing the truth. The evidence and facts disclosed by the record will not justify the conclusion that the verdict is clearly or palpably wrong.

Order affirmed.